1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   TONY KIM WHITE,

11              Petitioner,        CASE NO. 3:15-CV-05495-BHS-DWC

12       v.                        REPORT AND
                                   RECOMMENDATION
13   JEFFREY A UTTECHT,
                                   Noting Date: December 18, 2015
14              Respondent.

15

16       The District Court has referred this action to United States Magistrate Judge David W.

17   Christel. Petitioner filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254,

18   seeking relief from a state court conviction. The Court concludes Petitioner failed to properly

19   exhaust his state court remedies as to Grounds 1, 2, and 3(d). Because Petitioner's time for

20   pursuing state remedies has expired, Grounds 1, 2, and 3(d) are procedurally barred from federal

21   review. Further, the state court's adjudication of Grounds 3(a) – (c) and 4 was not contrary to, or

22   an unreasonable application of, clearly established federal law. Therefore, the undersigned

23   recommends the Petition be denied.

24

BACKGROUND

**A. Factual Background**

The Court of Appeals of the State of Washington summarized the facts of Petitioner's case as follows:

> I. Drug Delivery and Possession
>
> On January 19, 2010, Detective Ray Shaviri, Deputy Kory Shaffer, and a confidential informant (CI) discussed engaging in a "controlled [drug] buy" from Tony White, who had invited the CI to purchase crack cocaine from him. After Shaffer searched the CI, they issued him recorded money to complete the controlled buy. Shaviri drove the CI to a duplex at 5422 South Alder Street in Tacoma and watched him enter the residence. After a few minutes, the CI exited, came straight to Shaviri's car, told Shaffer that he had bought crack cocaine from "Tony," and gave the detectives the drugs he had purchased inside the residence; the drugs field tested positive for crack cocaine. Shaviri and Shaffer again searched the CI. The CI described "Tony" as an Asian male in his 30s with a ponytail and black hair.
>
> On February 17, Shaffer and approximately 10 other officers executed a search warrant on White's two-bedroom apartment at 5422 South Alder Street. One officer shouted, "Police. Search warrant. Open the door." After 10 or 15 seconds without a response, the police breached the reinforced door. Inside, they saw White come out of one of the bedrooms. In addition to White, police encountered three other people: James Marlow, Sheila McCully, and Charles Williams. Police secured all these individuals inside the residence.
>
> Shaffer read *Miranda* rights to White, who did not appear to be under the influence of drugs or alcohol. White voluntarily told Shaffer that (1) he (White) stayed in a room at the residence; (2) a woman named McCully also lived at the residence; (3) White's former roommate, Misty Navensken, had sold crack out of the house but had moved out a couple of weeks earlier; (4) he (White) had not sold crack at the residence; and (5) he had marijuana and prescription cold pills on his person. Shaffer found marijuana in White's pants pocket. Police also found White's wallet and identification card "[o]n his person."
>
> In the northeast bedroom, officers found White's insurance card, a receipt listing White's name and address at 5422 South Alder, a

letter addressed to White at 5422 South Alder, a red plastic container with cocaine residue, a plastic "baggie" with white residue, a bag containing 6 smaller bags with a combined total of 43 grams of crack cocaine, a sandwich "baggie" containing crack cocaine, a notebook containing "crib notes" with Navensken's name on the cover, and a surveillance monitor connected to a camera mounted above the front door. There was another surveillance camera at the top of the stairs to the apartment. In the living room, officers found an open box of sandwich "baggies" and two crack pipes.

Shaffer and another deputy measured 881 feet between the sidewalk to White's 5422 South Alder apartment front door and the nearest school bus stop. Shaffer estimated that the house was situated 15 feet back from the front property line and that it was 25 to 30 feet tall and 30 to 40 feet deep. Tacoma School District software also showed that White's residence was within 1,000 feet of a school bus stop.

## II. Procedure

The State charged White with (1) unlawful delivery of cocaine on January 19, 2010, with a sentencing enhancement for delivering within 1000 feet of a school bus stop; (2) unlawful possession of cocaine with intent to deliver on February 17, 2010, also with a school bus stop enhancement; (3) unlawful use of a building for drug purposes on February 17, 2010; and (4) unlawful possession of 40 grams or less of marijuana on February 17, 2010.

. . .

The jury found White guilty of all counts; it also found that he had committed Count I within 1,000 feet of a school bus stop. Count II's special verdict form, however, contained the question, "Did the defendant possess a controlled substance with intent to deliver the controlled substance *at any location*?" to which the jury answered, "Yes." Apparently the jury was not given and, thus, did not answer a special verdict question about whether White had committed Count II within 1,000 feet of a school bus stop.

White's offender score was six. The trial court sentenced him to a total of 128 months in confinement[.]

Dkt. 16, Exhibit 2, *State v. White*, Court of Appeals Cause No. 41579-8-II, pp. 2-4, 6

(unpublished opinion) (internal citations and footnotes omitted).

**B.  Procedural Background**

Petitioner challenged his Pierce County Superior Court convictions and sentence on direct appeal raising more than 20 grounds for relief. Dkt. 16, Exhibits 3, 4. The Court of Appeals of the State of Washington affirmed Petitioner's convictions and the special sentencing enhancement as to Count I and reversed the school bus stop enhancement as to Count II. Dkt. 16, Exhibit 2. The state court of appeals remanded the case for resentencing. Dkt. 16, Exhibit 2. Petitioner filed a motion to reconsider, which was denied. Dkt. 16, Exhibits 6, 7. On March 6, 2013, the Washington State Supreme Court denied Petitioner's petition for review. *See* Dkt. 16, Exhibits 8, 9.

Petitioner filed three relevant[1] personal restraint petitions ("PRP") seeking state post-conviction relief. *See* Dkt. 16, Exhibits 10, 17, 18. Petitioner's first PRP was dismissed by the Court of Appeals for the State of Washington and the state supreme court denied review. *See* Dkt. 16, Exhibits 10, 13, 16. Petitioner filed two additional PRPs. *See* Dkt. 16, Exhibits 17, 18. The state court of appeals transferred these two PRPs to the state supreme court, where the PRPs were dismissed. *See* Dkt. 16, Exhibit 22.

On July 14, 2015[2], Petitioner filed his Petition raising the following grounds: (1) "Factually Innocent/Insufficient Evidence of Count III: RCW 69.53.010 illegal use of building for drug purposes;" (2) "Actual Innocence/perjured testimony –fabricated evidence –presents new evidence in support;" (3) Ineffective assistance of counsel as counsel (a) did not consult with Petitioner to prepare for trial, (b) did not impeach witnesses, (c) failed to research the

---

[1] Respondent states Petitioner filed multiple PRPs; however, the additional PRPs are not subject to this Petition.

[2] Under the prison "mailbox rule," a petition is deemed filed for purposes of AEPDA's statute of limitations the moment it is delivered to prison authorities for forwarding to the clerk of the district court. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 n. 2 (9th Cir. 2001).

1 relevant statute under which Petitioner was charged and provide evidence proving Petitioner's

2 innocence, and (d) failed to present Deputy Fry's affidavit or call him as a witness for the

3 defense; and (4) "Prosecutor Misconduct/Failure to correct perjured testimony." Dkt. 6; 7, pp. 8-

4 15.

5         Respondent maintains Petitioner failed to exhaust Grounds 1, 2, and 3(d), and these

6 claims now barred from federal review. Dkt. 15. Respondent also argues the state court's

7 adjudication of Grounds 3(a) – (c) and 4 was not contrary to, or an unreasonable application of,

8 clearly established federal law. *Id*. Respondent served Petitioner with a copy of the Answer on

9 October 7, 2015, and Petitioner had until November 2, 2015 to respond. *See* Dkt. 15. Petitioner

10 has not filed a response to the Answer.

11 <u>EVIDENTIARY HEARING</u>

12         The decision to hold an evidentiary hearing is committed to the Court's discretion.

13 *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

14 hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

15 entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

16 available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

17 state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the

18 allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It

19 follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas

20 relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 131 S.Ct.

21 1388. The Court finds it is not necessary to hold an evidentiary hearing in this case because

22 Petitioner's claims may be resolved on the existing state court record.

23

24

DISCUSSION

**I.      Exhaustion and Procedural Default**

Respondent maintains Petitioner failed to exhaust Grounds 1, 2, and 3(d), and is procedurally barred from federal review of these three grounds. Dkt. 15.

A.   Exhaustion of State Remedies

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (*citing Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state

remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

In Ground 1 of this Petition, Petitioner asserts he could not be convicted under RCW 69.53.010[3] because he was convicted of selling drugs and therefore could not have provided a building for another person to sell drugs. Dkt. 6. Petitioner did not raise this ground to the highest state court on direct appeal. *See* Dkt. 16, Exhibit 8, p. 2. Petitioner also did not raise Ground 1 in his PRPs. *See* Dkt. 16, Exhibits 10, 14, 17, 18. As Petitioner did not raise the allegation contained in Ground 1 at the state level, he did not give the state court a full and fair opportunity to determine if a federal constitutional violation occurred. Thus, Ground 1 of the Petition was not properly exhausted.

In Ground 2, Petitioner asserts he is innocent because the CI and police officers provided perjured testimony. Dkt. 6, p. 7. In a PRP filed on July 30, 2014, Petitioner raised an actual innocence claim based on the State providing conflicting testimony from different witnesses. Dkt. 16, Exhibit 18, p. 3. Petitioner's PRP cited only to Washington State legal standards. *See* Dkt. 16, Exhibit 18. Additionally, the state court addressed Petitioner's claim in terms of state legal standards, not federal. Dkt. 16, Exhibit 22. To put state courts on notice of a federal claim, "the petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). As Petitioner did not assert this claim as a violation of a federal right, he did not give the state court a full and fair opportunity to

---

[3] Under RCW 69.53.010, "[i]t is unlawful for any person who has under his or her management or control any building, room, space, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, to knowingly rent, lease, or make available for use, with or without compensation, the building, room, space, or enclosure for the purpose of unlawfully manufacturing, delivering, selling, storing, or giving away any controlled substance under chapter 69.50 RCW, legend drug under chapter 69.41 RCW, or imitation controlled substance under chapter 69.52 RCW."

determine if a federal constitutional violation occurred. Therefore, Petitioner did not properly exhaust Ground 2.

In Ground 3(d), Petitioner alleges his trial counsel was ineffective when he failed to call Deputy Fry as a witness for the defense or present Deputy Fry's affidavit at trial. *See* Dkt. 7, pp. 12-13. Petitioner did not raise this ground to the highest state court on direct appeal. *See* Dkt. 16, Exhibit 8, p. 2. In his July 30, 2014 PRP, Petitioner raised several claims of ineffective assistance of counsel. *See* Dkt. 16, Exhibit 18. Petitioner, however, did not allege counsel was ineffective for any action or inaction involving Deputy Fry. *See id.* As Petitioner did not raise the allegation contained in Ground 3(d) at the state level, he did not give the state court a full and fair opportunity to determine if a federal constitutional violation occurred. Accordingly, Ground 3(d) was not properly exhausted.

B.  Procedural Default

The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court would hold the claim procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002) (citations omitted). If a state procedural rule would now preclude the petitioner from raising his claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Grounds 1, 2, and 3(d) are procedurally defaulted because if Petitioner attempted to present these claims in a subsequent PRP, the state court would find the claims barred by Washington law. Washington State imposes a one-year statute of limitations on filing a PRP or other post-conviction challenges. RCW § 10.73.090. The Court of Appeals for the State of

Washington issued a mandate finalizing Petitioner's state appeal on March 28, 2013. *See* Dkt. 16, Exhibit 16, p. 1. The time to file a petition or motion for post-conviction relief expired on March 28, 2014, one year from the issuance of the mandate. *See* RCW 10.73.090(1), (2)(b). As the one year statute of limitations has passed, Petitioner is barred from filing a subsequent PRP. *See id.* at (1).

Further, under Washington State law, the state court of appeals will not consider a second or successive PRP unless the petitioner certifies he has not filed a previous petition on similar grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See* RCW 10.73.140. Petitioner has not presented facts which could show good cause for his failure to raise the allegations contained in Grounds 1, 2, and 3(d) in his previous PRPs. Thus, these three Grounds are also subject to an implied procedural bar because these Grounds would be prohibited by an independent, adequate, and mandatory rule of state procedure, R.C.W. § 10.73.140, making a return to state court futile. *See Bolar v. Luna*, 2007 WL 1103933, *11 (W.D. Wash. April 10, 2007).

As Petitioner would be precluded from raising Grounds 1, 2, or 3(d) in the state court, these claims are procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1; *Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim.").

The procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

1  fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir.

2  1998) (*citing Coleman*, 501 U.S. at 750).

3      To establish "cause," a petitioner must show some objective factor external to the defense

4  prevented him from complying with the state's procedural rule. *Coleman,* 501 U.S. at 753 (citing

5  *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To show

6  "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his

7  trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial

8  disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v.*

9  *Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

10     Only in an "extraordinary case" may the habeas court grant the writ without a showing of

11 cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional

12 violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477

13 U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the

14 evidence in light of new reliable evidence, the petitioner must show "it is more likely than not

15 that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v.*

16 *Bell*, 547 U.S. 518, 537 (2006) (*citing Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

17      Here, Petitioner fails to show some objective factor external to his defense prevented him

18 from complying with the State's procedural bar rule. *See* Dkt. 6, 7. Petitioner also has not shown

19 prejudice. Furthermore, Petitioner has not provided new, reliable evidence showing he is actually

20 innocent, and therefore this is not the kind of extraordinary instance where this Court should

21 review the claim despite the absence of a showing of cause. Petitioner failed to show cause to

22 excuse his procedural default, and therefore the Court is barred from reviewing Grounds 1, 2, or

23 3(d) on the merits. Accordingly, the undersigned finds Petitioner is not entitled to relief as to

24 Grounds 1, 2, or 3(d) and recommends these three claims be dismissed. *See Casey*, 386 F.3d 896.

## II.    Review of State Courts' Adjudication

Respondent maintains the state courts' adjudication of Grounds 3(a)-(c) and 4 was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 15.

A.   Standard of Review

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where

it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (*quoting Williams*, 529 U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at 1398.

This Court recognizes the state court did not provide a detailed discussion of Grounds 3(a)-(c) and 4. However, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). The state court denied Grounds 3(a) – (c) and 4 on the merits, not on procedural principles. Therefore, the state court's decision provides a proper basis for review on the merits.

   B.   Ineffective Assistance of Counsel

In Ground 3(a) – (c), Petitioner alleges his trial counsel, Mr. Steven Burgess, was ineffective by: (a) failing to consult with Petitioner to prepare for trial, (b) failing to impeach witnesses with conflicting testimony, and (c) failing to research the relevant statute under which Petitioner was charged and provide evidence proving Petitioner's innocence. Dkt. 6, p. 8.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by

the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In determining if Petitioner's trial counsel was ineffective, the state supreme court applied the standard set forth in *Strickland* and found Petitioner failed to show counsel provided ineffective assistance. Dkt. 16, Exhibit 22, p. 3. The state supreme court stated:

> Mr. White contends that counsel did not adequately prepare for trail, did not adequately research a defense, did not interview alibi witnesses, and failed to preserve issues for direct appeal by not objecting. These claims are conclusory and lacking in evidentiary support.

*Id.* (internal citations omitted).

Mr. Burgess submitted evidence and argued Petitioner's statements at the time of his arrest should be suppressed during a Rule 3.5 hearing. *See* Dkt. 16, Exhibit 23.At the trial, Mr. Burgess cross-examined the State's witnesses, raised objections, and conducted direct examination of Petitioner. *See* Dkt. 16, Exhibits 23-26. During his closing argument, Mr.

1    Burgess called into question the credibility of the State's witnesses, challenged the conflicting

2    testimony between the police officers and the CI, and argued the evidence failed to prove

3    Petitioner provided a building for others to use for drug purposes. *See* Dkt. 16, Exhibit 26.

4          In his Memorandum filed in support of the Petition, Petitioner attached a copy of a visitor

5    log from the jail and a letter stating Mr. Burgess only visited Petitioner on one occasion prior to

6    the trial. Dkt. 7, pp. 40-41. The jail log and letter are not sufficient to show the state court erred

7    in finding there was a lack of evidentiary support for Petitioner's claim that Mr. Burgess's

8    representation was deficient.

9          Petitioner failed to demonstrate the state court's conclusion regarding his ineffective

10   assistance of counsel claims was contrary to, or an unreasonable application of, clearly

11   established federal law, or was an unreasonable determination of the facts in light of the evidence

12   presented at trial. Accordingly, Ground 3(a), (b), and (c) should be denied.

13         C.   Prosecutorial Misconduct

14         In Ground 4, Petitioner alleges the prosecutor acted improperly when he allowed the

15   State's witnesses to provide perjured testimony. Dkt. 6, p. 10; 7, pp. 15-20.

16         "[A] conviction obtained by knowing use of perjured testimony is fundamentally unfair,

17   and must be set aside if there is any reasonable likelihood that the false testimony could have

18   affected the judgment of the jury." *U.S. v. Agurs*, 427 U.S 97, 103 (1975) (footnotes omitted);

19   *Giglio v. U.S.*, 405 U.S. 150, 153 (1972). "[T]he knowing use of false testimony to obtain a

20   conviction violates due process regardless of whether the prosecutor solicited the false testimony

21   or merely allowed it to go uncorrected when it appeared." *U.S. v. Bagley*, 473 U.S. 667, 679 n.8

22   (1985); *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959).

23

24

1    However, mere inconsistencies in the evidence do not constitute the knowing use of

2    perjured testimony by the prosecutor. *U.S. v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995).[4]

3    "The fact that a witness may have made an earlier inconsistent statement, or that other witnesses

4    have conflicting recollections of events, does not establish that the testimony offered at trial was

5    false." *U.S. v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997). "Discrepancies in . . . testimony . . .

6    could as easily flow from errors in recollection as from lies." *Zuno-Arce*, 44 F.3d at 1423.

7    "Petitioner must point to something in the prosecutor's questioning, or the answers given, that

8    may be construed as reflecting an intention by the prosecutor to mislead the jury." *Gomez v.*

9    *Adams*, 555 F.Supp.2d 1070, 1091 (C.D. Cal. 2008) (*citing U.S. v. Etsitty*, 130 F.3d 420, 424

10   (9th Cir. 1997)).

11       The state supreme court found

12           the State produced evidence of controlled illegal drug transactions
             involving Mr. White and the suspect residence. That Mr. White
13           disagrees with the persuasiveness of the State's evidence does not
             entitle him to relief by personal restraint petition. His related and
14           implied claim that the prosecutor acted improperly by suborning
             witness perjury or by failing to correct witness testimony is
15           unsupported by any evidence.

16   Dkt. 16, Exhibit 22, pp. 2-3.

17       In his Memorandum, Petitioner attached a search warrant affidavit, executed by Deputy

18   Mark Fry on February 10, 2010, as evidence showing the prosecutor allowed perjured testimony.

19   *See* Dkt. 7, pp. 35-38. In the affidavit, Deputy Fry states a CI made two "reliability" buys from a

20   woman named "Misty" at 5422 South Alder Street. *Id.* at p. 37-38. Petitioner contends the

21   _____

22       [4] Although Supreme Court precedent provides the only relevant source of clearly established
     federal law for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of
23   determining whether particular state court decision is an 'unreasonable application' of Supreme court
     law," and in ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme,* 200 F.3d 597, 600–
24   01 (9th Cir. 2000).

1    affidavit shows the CI sold only to "Misty," and therefore he is innocent and the prosecutor acted

2    improperly by allowing witnesses to testify he sold drugs to the CI. Dkt. 7, pp. 18-20.

3          The trial testimony shows the CI made more than two documented drug buys, and there is

4    no evidence showing Deputy Fry's affidavit is identifying the drug buy between Petitioner and

5    the CI. *See* Dkt. 16, Exhibit 23, pp. 215-16 (the CI testified, "I believe there was three or four, all

6    of those documented buys, and [Misty] was definitely one of them."). Thus, the affidavit does

7    not show the prosecutor allowed perjured testimony. Further, any alleged inconsistencies in the

8    trial testimony do not, alone, show the prosecutor knowingly used or allowed perjured testimony.

9          In his Petition and Memorandum, Petitioner provides only an alternative interpretation of

10   the facts. He failed to demonstrate the state court's conclusion regarding prosecutorial

11   misconduct was contrary to, or an unreasonable application of, clearly established federal law, or

12   was an unreasonable determination of the facts in light of the evidence presented at trial.

13   Therefore, Petitioner is not entitled to relief on Ground 4.

14                              <u>CERTIFICATE OF APPEALABILITY</u>

15         A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

16   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

17   (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

18   may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

19   constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

20   that jurists of reason could disagree with the district court's resolution of his constitutional

21   claims or that jurists could conclude the issues presented are adequate to deserve encouragement

22   to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*,

23   529 U.S. 473, 484 (2000)).

24

1    No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

2    would conclude the issues presented in the Petition should proceed further. Therefore, the Court

3    concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

4                                              <u>CONCLUSION</u>

5    The Court recommends Grounds 1, 2, and 3(d) be dismissed and Grounds 3(a) – (c) and 4

6    be denied. No evidentiary hearing is necessary and a certificate of appealability should be

7    denied. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

8    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

9    6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

10   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

11   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

12   December 18, 2015, as noted in the caption.

13   Dated this 1st day of December, 2015.

14

15
                                              David W. Christel
16                                            United States Magistrate Judge

17

18

19

20

21

22

23

24